## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 06 CR 50055-(2) |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CORVET WILLIAMS and BRIAN AUSTIN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

After a jury convicted Defendants Corvet Williams and Brian Austin of armed bank robbery and the use of a firearm in a crime of violence, the court sentenced each of them to 684 months' imprisonment. Williams and Austin have now filed motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on the First Step Act's changes to the mandatory sentences for their firearms convictions. First Step Act of 2018 § 403(b), Pub. L. No. 115-391, 132 Stat. 5194. Because the Court concludes that Williams and Austin meet the criteria for a sentence reduction under § 3582(c)(1)(A)(i), the Court reduces each of their sentences to 288 months' imprisonment.

## BACKGROUND

After a second jury trial, a jury convicted Williams and Austin of two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and two counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C.§ 924(c)(1)(A). The court sentenced both Williams and Austin to 684 months' imprisonment, as follows: 300 months on the substantive bank robbery charges, to run concurrent to each other, followed by a consecutive term of 84 months on the first § 924(c) charge and a consecutive term of 300 months on the second § 924(c) charge.

Williams and Austin have served approximately fourteen years of their fifty-seven year sentences. Williams is currently serving his sentence at USP Big Sandy in Inez, Kentucky, with a projected release date of September 24, 2055. Austin is currently serving his sentence at FCI Pollock in Pollock, Louisiana, with a projected release date of July 14, 2055.

## ANALYSIS

The Court may not modify a term of imprisonment once it has been imposed except as expressly permitted by § 3582(c). *United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014). Section 3582(c)(1)(A)(i) allows the Court to reduce a term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Before Congress enacted the First Step Act, a court could only do so on the motion of the Director of the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A) (2016). The First Step Act expanded access under § 3582(c)(1)(A) to allow a defendant to file a motion with the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Lohmeier*, No. 12 CR 1005, 2020 WL 2836817, at *2 (N.D. Ill. June 1, 2020) (collecting cases holding that § 3582's exhaustion requirement is mandatory and not subject to any judicially created exceptions). The government agrees that Williams and Austin have both met the exhaustion requirement.

In addition to the exhaustion requirement, to determine whether a defendant is entitled to a sentence reduction under § 3582(c)(1)(A)(i), the Court considers (1) whether the reduction is supported by "extraordinary and compelling reasons," (2) whether the defendant poses a danger to the community as set forth in 18 U.S.C. § 3142(g); (3) whether the reduction is consistent with

2

policy statements issued by the U.S. Sentencing Commission, and (4) the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The Court now turns to these considerations.

## I.   Extraordinary and Compelling Reasons Consistent with Applicable Policy Statements

Congress did not define what qualifies as an "extraordinary and compelling reason" for purposes of § 3582(c)(1)(A)(i). Instead, it tasked the Sentencing Commission to promulgate general policy statements describing criteria for determining "extraordinary and compelling reasons for sentence reduction" and specific examples. 28 U.S.C. § 994(t). Congress' only guidance was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission set forth four circumstances that constitute "extraordinary and compelling reasons," including a defendant's medical condition, age, and family circumstances, as well as a "catch-all provision." U.S.S.G. § 1B1.13 n.1(A)–(D); *United States v. Cardena*, 461 F. Supp. 3d 798, 802 (N.D. Ill. 2020). The catch-all provision reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D).

The government argues that, although the First Step Act changed the procedure by which a defendant may seek compassionate release, the Sentencing Commission's enumerated "extraordinary and compelling reasons" remain binding on the Court. *See, e.g.*, *United States v. Rollins*, No. 99 CR 771-1, 2020 WL 3077593, at *1–2 (N.D. Ill. June 10, 2020) (Section 3582(c)(1)(A) "requir[es] that courts adhere to U.S.S.G. § 1B1.13 when considering a compassionate release motion); *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at

*4 (S.D. Ala. Aug. 13, 2019) (Sentencing Commission's guidance remains binding on courts even after the First Step Act). But the Sentencing Commission has not updated § 1B1.13 since the passage of the First Step Act,[1] which only allows for a "reduction under this policy statement . . . upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A)."[2] U.S.S.G. § 1B1.13 n.4. Rejecting the government's argument, the Seventh Circuit recently concluded that, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *United States v. Gunn*, --- F.3d ----, 2020 WL 6813995, at *2 (7th Cir. 2020); *see also United States v. Brooker*, 976 F.3d 228, 235–36 (2d Cir. 2020) (district courts have discretion to determine what constitutes extraordinary circumstances with respect to compassionate release motions brought by a defendant directly to the court). Instead, "while the criteria in § 1B1.13 provides useful guideposts, the court may look beyond the defendant's medical condition, age, and family circumstances, as delineated in the Sentencing Commission's guidance, to construe what constitutes extraordinary and compelling circumstances." *Cardena*, 461 F. Supp. 3d at 802; *see also United States v. Shannon*, No. 13 CR 535, 2020 WL 3489491, at *1 (N.D. Ill. June 26, 2020) (catch-all provision "entrust[s] courts with the discretion to find that any 'reason other than . . . the reasons described' in the policy statement also constitutes an 'extraordinary and compelling reason' to reduce a sentence" (quoting U.S.S.G. § 1B1.13 n.1)); *United States v.*

---

[1] The Sentencing Commission's failure to update § 1B1.13 in light of the First Step Act may be attributable to the fact that the Sentencing Commission currently only has two voting members and so lacks the required numbers to amend the Guidelines. *United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *6 (W.D.N.Y. Apr. 20, 2020).

[2] The BOP updated its program statement on compassionate release on January 17, 2019, after the passage of the First Step Act. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Program Statement 5050.50 does not expand the categories the BOP uses in considering requests for compassionate release beyond the three enumerated by the Sentencing Commission: medical condition, age, and family circumstances. *Id.*

*Arey*, 461 F. Supp. 3d 343, 348–49 (W.D. Va. 2020) (although the Sentencing Commission and BOP criteria "remain helpful guidance," courts have "independent discretion" to determine what constitutes an extraordinary and compelling reason for purposes of § 3582(c)(1)(A)); *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6–7 (S.D. Iowa Apr. 29, 2020) ("[I]f the First Step Act is to increase the use of compassionate release, the most natural reading of § 3582(c) is that the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

Williams and Austin advance a reason for a sentence reduction that the Sentencing Commission's policy guidance does not describe: the First Step Act's clarification that § 924(c)'s stacking provisions do not allow for the consecutive sentences they received for their two § 924(c) convictions.[3] At the time of sentencing, § 924(c)(1)(C)(i) provided that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C. § 924(c)(1)(C) (2006). Courts understood this to allow for the stacking of penalties, even when both convictions under § 924(c) arose from the same indictment. *See Deal v. United States*, 508 U.S. 129, 131–34 (1993), *superseded by statute* Pub. L. No. 115-391, § 403(a), *as recognized in United States v. Davis*, --- U.S. ----, 139 S. Ct. 2319 (2019); *United States v. Cardena*, 842 F.3d 959, 1000 (7th Cir. 2016). But in 2018, as part of the First Step Act, Congress amended § 924(c) to allow for the imposition of the twenty-five year mandatory minimum only "[i]n the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C) (2018). This means that, under current law, the twenty-five year

---

[3] Austin also contends that his sentence reflects a penalty for exercising his right to a trial, but the Court need not address this advanced basis for a sentence reduction.

mandatory minimum for subsequent § 924(c) convictions does not apply where both § 924(c) convictions arise from the same indictment. *Id.*

Because Williams and Austin did not have any prior § 924(c) convictions, the parties agree that, had they been sentenced after the passage of the First Step Act, the twenty-five year enhancement for a second § 924(c) conviction would not have applied. Instead, they would have faced seven-year sentences for each § 924(c) conviction. *Id.* § 924(c)(1)(A)(ii). In other words, their total sentence would have been 468 months' imprisonment instead of 684. But, as both Williams and Austin recognize, the First Step Act did not make the change to § 924(c)'s twenty-five year stacking provision retroactive. Pub. L. No. 115-391, § 403(b). They nonetheless contend that the Court may exercise its discretion to reduce their sentences given the change in the sentencing provisions and their rehabilitation. The government responds that Williams and Austin cannot use § 3582(c)(1)(A) to circumvent Congress' decision not to make the change retroactive.

The Court acknowledges that some courts have agreed with the government that Congress' decision not to make the § 924(c) change retroactive precludes consideration of that change as an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United States v. Fulcher*, No. 1:98-cr-00119-SEB-TAB, 2020 WL 4547970, at *2 (S.D. Ind. Aug. 5, 2020) ("If Congress intended to authorize courts to exercise discretion to apply § 403 retroactively to otherwise ineligible defendants, it would have included that amendment in § 404(b). Mr. Fulcher may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend."); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("Despite Fox's understandable frustration over the unfairness he perceives in others getting

6

sentencing benefits while he does not, the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes *not* retroactive or Congress's decision to reduce sentences for some crimes but not others, or a means to redress perceived disparities with other sentenced defendants."). But the Court does not find this rationale persuasive and instead concludes that Congress' decision not to make the changes to § 924(c)'s stacking provisions retroactive "simply establishes that a defendant sentenced before the FSA is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("It is not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis."). A majority of the courts to have examined this specific question agree that the change to the § 924(c) stacking provision amounts to an extraordinary and compelling reason for a sentence reduction. *See United States v. Jones*, No. 19 C 1947, 2020 WL 2526478, at *10 (N.D. Ill. May 18, 2020) (collecting cases); *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *2 (E.D. Wis. Aug. 7, 2020) (collecting cases); *Arey*, 2020 WL 2464796, at *5 (collecting cases). Section 3582(c)'s legislative history also supports this conclusion; the Senate Judiciary Committee contemplated in 1983 that a sentence reduction may be justified in "cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. 98-225, 55–56, 1984 U.S.C.C.A.N. 3182, 3238–39; *see also Maumau*, 2020 WL 806121, at *6 ("Congress indicated

thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are 'unusually long[.]'"). The eighteen-year difference in the sentence Williams and Austin received and the sentence Congress has now deemed warranted for the second § 924(c) conviction supports finding an extraordinary and compelling reason for a sentence reduction. *Brown*, 2020 WL 4569289, at *4 (eighteen-year difference on the defendant's § 924(c) mandatory terms of imprisonment supported a sentence reduction); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); *see also United States v. Redd*, 444 F. Supp. 3d 717, 722–23 (E.D. Va. 2020) ("In assessing whether Mr. Redd has presented extraordinary and compelling reasons, the Court has initially and centrally considered the sentence he received relative to the sentence he would now receive for the same offense, whether and to what extent there is a disparity between the two sentences, and why that disparity exists.").

The Court also finds support for a sentence reduction in Williams' and Austin's records of rehabilitation while in prison. *See Marks*, 2020 WL 1908911, at *7 (collecting cases finding that "the *combination* of changes to the 'stacking' provisions of § 924(c), coupled with the defendant's rehabilitation, establish extraordinary and compelling conditions warranting a sentence reduction"). The Court will discuss their personal characteristics in more detail below. At this juncture, it suffices for the Court to note that the government does not address their prison records or representations of rehabilitation. In light of the sentencing disparity created by Congress' change to § 924(c)'s stacking provisions and Williams and Austin's records of rehabilitation, the Court finds extraordinary and compelling reasons to reduce their sentences.

II.     **Section 3553(a) and 3142(g) Considerations**

Having found that extraordinary and compelling reasons exist, the Court also must consider whether the sentencing factors in § 3553(a) support compassionate release and whether Williams and Austin pose a danger to the community as provided in § 3142(g).  The § 3553(a) factors include the defendant's history and characteristics, the nature and circumstances of the offense, the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public from further crimes by the defendant, and providing him with any necessary services and treatment.  18 U.S.C. § 3553(a).  This analysis overlaps somewhat with the determination of whether a defendant poses a danger to the community.  *See* 18 U.S.C. § 3142(g) (in determining the conditions of release, a court should consider the nature and circumstances of the offense, the weight of evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community posed by the defendant's release).  Despite reference to compassionate release, § 3582(c)(1)(A) does not require the Court to order Williams' and Austin's immediate release but also allows a reduction in their sentences even if it does not lead to their immediate release.  *Maumau*, 2020 WL 806121, at *8.

Both Williams and Austin acknowledge the seriousness of their crimes.  But the record reflects that, despite their long sentences, they have treated their time in prison as opportunities for growth and rehabilitation.  Williams has expressed his remorse for the crimes he committed, acknowledged that "the way [he] was living was truly insane," and indicated that he does not wish to return to such a life.  Doc. 371-1 at 1.  During Williams' incarceration, his brother was murdered, an experience that Williams indicates demonstrated to him the senseless nature of gun violence.  Williams also acknowledges that he does not have a clean prison disciplinary record

9

and admits to a "rocky" journey, but he indicates that he is "constantly working to improve [his] thinking & behavior." *Id.* To that end, his BOP progress report reflects that he has taken advantage of numerous classes offered by the BOP and that he is "making good progress." Doc. 371-3 at 3. Similarly, Austin acknowledges that although he "did not at first deal with his 57 year sentence with grace, and responded in despair the first few years of his incarceration," he has since worked to better himself and those around him. Doc. 359 at 2. He has participated in and worked as a mentor in cognitive behavioral treatment programs offered by the BOP, receiving praise for his participation and application of the principles he has learned to life in prison. Austin also represents that he has completed vocational training to become a master mechanic while in prison.

Both defendants committed the robberies while in their twenties. The Court does not see a reason to keep them in prison into their seventies, particularly in light of the steps they have taken while in prison to change their thinking and behavior and prepare for life outside of prison. The record does not support a finding that they would pose a danger to their communities. Although the Court does not find immediate release warranted, the Court notes that Williams and Austin have both presented release plans that demonstrate that they have given thought to their future reentry into society and that they have a strong support network of family and friends. Reducing the term of imprisonment on the second § 924(c) count to correspond to the sentence they would receive today would also avoid unwarranted sentencing disparities and comply with Congress' recognition that a shorter sentence reflects the seriousness of that offense and provides just punishment for that offense. This Court, like the Seventh Circuit's opinion in Defendants' second appeal, notes that "[a] sentence of 684 months – 57 years – in a criminal justice system in which parole has been abolished is extraordinarily severe; the defendants were in their late 20s

when sentenced, so in all likelihood will spend the rest of their lives in prison." *United States v. Williams*, 698 F.3d 374, 384 (7th Cir. 2012).Therefore, having considered the § 3553(a) and § 3142(g) factors, the Court finds it appropriate to reduce both Williams and Austin's sentences on the second § 924(c) charge (Count 4) from 300 months to 84 months and reduce their sentences on the bank robbery charges (Counts 1 and 3) from 300 months to 120 months, reducing their total sentences from fifty-seven to twenty-four years. "A [twenty-four]-year sentence is no laughing matter, either; it serves the same retributive, deterrent, and protective purposes[.]" *Brown*, 2020 WL 4569289, at *7. The remaining terms and conditions of their sentences remain unmodified.

## CONCLUSION

For the foregoing reasons, the Court grants Williams and Austin's motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [353, 359]. The Court reduces Williams' and Austin's sentences for Counts 1 and 3 from 300 months to 120 months to run concurrently and Count 4 from 300 months to 84 months, to run consecutive to the remainder of their sentences, for a total sentence of 288 months' imprisonment for each Defendant. All other aspects of their criminal convictions and sentences remain unmodified.

Dated: November 25, 2020

_____

SARA L. ELLIS
United States District Judge